FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2023-2478
_____

CHARLES C. WENDELL,

   Appellant,

   v.

STATE OF FLORIDA,

   Appellee.

_____

On appeal from the Circuit Court for Santa Rosa County.
Darlene F. Dickey, Judge.

August 7, 2024

ROWE, J.

   Charles C. Wendell appeals an order denying his motion for postconviction relief after an evidentiary hearing. Wendell raised nine claims of ineffective assistance of counsel. Finding no error by the postconviction court, we affirm.

   Wendell was convicted of capital sexual battery and sexual battery by a person in position of familial or custodial authority and was sentenced to consecutive terms of life and thirty years in prison. This court affirmed his convictions and sentences on direct appeal. *Wendell v. State*, 289 So. 3d 872 (Fla. 1st DCA 2020).

   Wendell then moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. In his second amended motion,

Wendell alleged that his trial counsel was ineffective for: (1) failing to impeach the child victim with her prior inconsistent statements, (2) failing to adequately cross-examine the victim and elicit testimony that could be impeached with prior inconsistent statements, (3) failing to raise the correct legal argument to exclude evidence of Wendell's domestic abuse of the victim's mother, (4) eliciting evidence that Wendell abused the victim's baby sister, (5) failing to call the victim's mother as a witness, (6) failing to call the victim's older brother as a witness, (7) failing to call the victim's therapist as a witness, (8) failing to ask the court to order the victim to undergo a medical examination, and (9) failing to object to improper comments made by the prosecutor during closing argument.

The postconviction court held an evidentiary hearing on claims one, two, three, and four. The sole witness at the hearing was Wendell's trial counsel, Clinton Couch. After the hearing, the trial court denied claims one, two, three, and four. It denied claims five and six as facially insufficient. And it summarily denied the remaining claims as conclusively refuted by the record. This appeal follows.

*Standard of Review*

When reviewing an order denying a postconviction motion after an evidentiary hearing, this court defers to the trial court's findings of facts supported by competent, substantial evidence and reviews the trial court's legal conclusions de novo. *Hunter v. State*, 87 So. 3d 1273, 1275 (Fla. 1st DCA 2012)

To show that his trial counsel was ineffective, Wendell had to prove that "counsel's performance was outside the wide range of acceptable professional standards, and that such conduct prejudiced the outcome of the proceedings because without the conduct there is a reasonable probability that the outcome would have been different." *Moran v. State*, 383 So. 3d 549, 551–52 (Fla. 1st DCA 2024) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 691–92 (1984)).

*Claims One–Four*

Wendell asserted in his first, second, and fourth claims that his trial counsel was ineffective for failing to properly cross-examine the child victim. First, Wendell argues that counsel failed to impeach the victim with inconsistent statements she made during her Child Protection Team (CPT) interview and her deposition. Wendell contends that his trial counsel should have asked the victim about the conflicts in her testimony about how old she was when the abuse began, how many times Wendell anally penetrated her, and whether Wendell threatened the victim's family to keep her from disclosing the abuse.

Second, Wendell argues that his trial counsel counsel should have cross-examined the victim about: (1) why she stated during the CPT interview that Wendell's penis had freckles on it, but stated in her deposition that she never saw his penis and (2) why she stated in her CPT interview that Wendell never spoke during the incidents but the victim stated in her deposition that Wendell mumbled, "You're so tight."

Fourth, Wendell argued that his trial counsel should not have introduced Wendell's bad acts against the victim's sister when the State did not introduce that evidence at trial.

The postconviction court denied these three claims based on the record and testimony from Wendell's trial counsel at the evidentiary hearing. Couch testified that, over his thirty-one years of practice, he had developed a strategy for questioning child victims in sexual battery cases. He tried to impeach the victim's credibility without offending the jury. As part of this strategy, he chose not to impeach the child victim about details that would not negate the elements of the charged offenses. Couch explained that cross-examining a child victim over minor conflicts between her trial testimony, CPT interview, and depositions about the details of the offenses would risk inflaming the jury.

The record also shows that Couch did call the child victim's credibility into question during cross-examination. The victim testified that she moved out of Wendell's home a couple of a months before she reported the abuse to her father and stepmother. Couch

elicited testimony that the child victim never told her mother about the sexual abuse—even after her mother asked if the victim had a problem with Wendell. Couch also elicited testimony that the child victim did not disclose the abuse to her therapist until after she told her stepmother. Couch emphasized that the victim had the chance to disclose the abuse to her father because she stayed with him on the weekends. Couch also called into doubt the credibility of the victim's allegations that Wendell abused her sister by pointing out that the victim called the police to report Wendell abusing her mother, but she never mentioned to police that Wendell was abusing her sister.

The trial court found credible Couch's testimony on his approach to cross-examining the victim. The trial court concluded that because Couch made strategic decisions about how to impeach and cross-examine the child victim, his performance was not deficient. *Schoenwetter v. State*, 46 So. 3d 535, 554 (Fla. 2010) ("Reasonable decisions regarding trial strategy, made after deliberation by a claimant's trial attorneys in which available alternatives have been considered and rejected, do not constitute deficient performance under *Strickland*."). Competent, substantial evidence supports the trial court's factual findings and we agree with the trial court's conclusion that Couch did not render deficient performance in his cross-examination of the victim. *See State v. Riechmann*, 777 So. 2d 342, 356 (Fla. 2000) (holding that counsel's performance was not deficient when "cross-examination is used to bring out the weaknesses in the witness's testimony").

In his third claim, Wendell argued that counsel failed to make the correct legal argument for excluding evidence of Wendell's domestic abuse of the victim's mother. But the citation opinion from Wendell's direct appeal shows that this court has considered and rejected this claim:

> Affirmed. *See Bell v. State*, 798 So. 2d 47, 48 (Fla. 4th DCA 2001) (holding that in a prosecution of sexual battery of a child, evidence of physical abuse against the child's mother was admissible to explain why the victim had not earlier reported the crime for fear of the defendant's retribution); *see also State v. Hogan*, 451 So. 2d 844, 845–46 (Fla. 1984) (concluding that a twelve-

person jury is not required in prosecutions of sexual battery of a child).

*Wendell v. State*, 289 So. 3d 872 (Fla. 1st DCA 2020). Thus, the trial court did not err when it denied this claim, either. *See Moore v. State*, 768 So. 2d 1140, 1141 (Fla. 1st DCA 2000) ("A defendant who did present an issue on direct appeal cannot raise the same issue again in a subsequent postconviction motion, because the decision of the appellate court is the law of the case.").

### *Claims Five and Six*

In claims five and six, Wendell argued that his trial counsel was ineffective for failing to call the victim's mother and brother as witnesses. The postconviction court denied these claims as facially insufficient. The trial court did not err because Wendell failed to allege that either witness was available for trial. *See Thomas v. State*, 284 So. 3d 1167, 1168 (Fla. 1st DCA 2019). And because the court had given Wendell a chance to amend any facially insufficient claims, it was not required to provide Wendell with another chance to amend under *Spera v. State*, 971 So. 2d 754 (Fla. 2007). *See Nelson v. State*, 977 So. 2d 710, 711 (Fla. 1st DCA 2008) (holding that a trial court does not have to grant a defendant more than one chance to amend a facially insufficient claim).

### *Claims Seven–Nine*

Wendell argued in claim seven that his trial counsel was ineffective for failing to call the victim's therapist to explain that the alleged sexual abuse was not the cause of the victim engaging in self-harm. The postconviction court did not err in summarily denying this claim. The psychotherapist-patient privilege grants a patient the "privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications or records made for the purpose of diagnosis or treatment of the patient's mental or emotional condition." § 90.503(2), Fla. Stat. This privilege may be asserted by the patient, the patient's guardian, or the psychotherapist. § 90.503(3), Fla. Stat. Wendell cannot show that the victim, her guardians, or her therapist would have been willing to waive this privilege. And so, he also cannot show that counsel's performance was deficient.

Eighth, Wendell argued that his counsel was ineffective for not asking the trial court to order the victim to undergo a medical examination. But Wendell cited no authority that would have authorized the trial court to order such an examination. The victim did not report the abuse until months afterward, when she was in her father's custody. It is unclear what, if any evidence, could have been gathered during the examination. And the lack of a medical examination may have favored Wendell because there was no physical evidence of the sexual abuse. Because Wendell cannot show that he was prejudiced by counsel's failure to request a medical examination of the victim, the postconviction court did not err in summarily denying claim eight.

Last, Wendell alleged that his counsel was ineffective for not objecting to improper comments during the prosecutor's closing argument. Wendell argues that the prosecutor mischaracterized why the victim cut herself, bolstered the victim's testimony, and highlighted facts not in evidence. Not so. The prosecutor's comments repeated and were based on the victim's own testimony.

The child victim testified that she began cutting herself after the sexual battery because she felt guilty and that she "deserved everything that was going on, that [she] deserved the abuse, and that [she] deserved seeing [her] mom beat, and everything."

The prosecutor argued during closing:

> Ladies and gentlemen, she also told you that she felt like it was her hell to live in, her own personal hell to live in. Those were her words, that she felt guilty about what he was doing to her. She felt guilty that she couldn't control the things that were going on in her home. And instead of telling someone what he was doing to her she took it out on her own body by cutting herself. Those were her words.
>
> . . . .

Mr. Couch just says, "Maybe she didn't have a friend to rely on. Maybe that's why she cut herself." Was there any evidence of that, ladies and gentlemen? Absolutely not. The evidence -- the testimony from ██████ was that she was cutting herself because of what he was doing to her. That's the evidence that you had -- not that she cut herself because she was lonely and didn't have any friends.

. . . .

And this suggestion that perhaps she has other problems, no evidence of that, ladies and gentlemen, none. No other evidence, as to why she cut herself, and why she was depressed other than for the reasons that she told you.

"The purpose of closing argument is to review the evidence and illuminate the reasonable inferences the jury may draw from the evidence." *Hamilton v. State*, 351 So. 3d 1275, 1278 (Fla. 1st DCA 2022). Attorneys are afforded "wide latitude" during closing. *Id.* None of the comments by the prosecutor improperly bolstered the child victim's testimony. *Cf. Hutchinson v. State*, 882 So. 2d 943, 953 (Fla. 2004) ("Improper bolstering occurs when the State . . . indicates that information not presented to the jury supports the witness's testimony."). The prosecutor fairly commented on the evidence. The victim testified that the sexual abuse was one of the reasons she started cutting. *See Lynn v. State*, 286 So. 3d 357, 361 (Fla. 1st DCA 2019) ("Because the prosecutor's argument was a fair comment on the evidence, defense counsel had no grounds for an objection."). Because defense counsel had no legal grounds to object to the prosecutor's closing statements, the postconviction court did not err in summarily denying this claim.

AFFIRMED.

KELSEY and LONG, JJ., concur.

_____

***Not final until disposition of any timely and
authorized motion under Fla. R. App. P. 9.330 or
9.331.***

_____


Charles C. Wendell, pro se, Appellant.

Ashley Moody, Attorney General, and Holly Noel Simcox,
Assistant Attorney General, Tallahassee, for Appellee.